UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORENZO MELENDEZ,

                Plaintiff,

v.

THE NEW YORK FOUNDLING, INC.,

                Defendant.

No. 17-CV-6162 (KMK)

OPINION & ORDER

Appearances:

Michael B. Ranis, Esq.
Foulke Law Firm
Goshen, NY
*Counsel for Plaintiff*

Joseph B. Cartafalsa, Esq.
Ogletree Deakins
New York, NY
*Counsel for Defendant*

Andrew C. Karter, Esq.
Putney, Twombly, Hall & Hirson LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

      Lorenzo Melendez ("Plaintiff") brings this Action against The New York Foundling, Inc. ("Defendant"), alleging that Defendant terminated Plaintiff's employment on the basis of gender, in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; that Defendant terminated Plaintiff's employment because of his numerous complaints about Defendant's health and safety problems, in violation of the New York Whistleblower Act, N.Y. Labor Law § 740; and that Defendant denied Plaintiff severance pay to which he was entitled, in violation of the Employee Retirement and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Before the Court is

Defendant's Motion To Dismiss (the "Motion"). (Dkt. No. 30.)

For the following reasons, the Motion is granted in part and denied in part.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint, (Am Compl. (Dkt. No. 16)), and are taken as true for the purpose of resolving the instant Motion.

Defendant is a New York corporation that, among other ventures, operates group homes in New York, Rockland, Orange, and Westchester counties that house, service, and treat adults with developmental disabilities. (Am. Compl. ¶ 4.) In November 2001, Plaintiff was hired as a residential director of Defendant's Residential Treatment Center in Rockland County. (*Id.* ¶ 6.) Over the following decade, Plaintiff received several "promotions and title changes," (*id.*), and in 2013, Plaintiff became an Assistant Vice President. (*Id.* ¶ 14.) Plaintiff was thereafter selected to oversee the opening of four new group home facilities in Staten Island. (*Id.* ¶ 16.) In February 2014, Plaintiff's performance evaluation was strong, resulting in an "exceeds" or "meets" expectations rating in all categories. (*Id.* ¶ 15.)

In late 2014, Plaintiff sustained a broken leg while at work and was absent for approximately three months, returning in February 2015. (*Id.* ¶ 19.) Upon his return, Plaintiff noticed problems relating to the lack of safety and training at the Staten Island group homes for which he was responsible and began to document them. (*Id.*) Plaintiff reported such problems to Jill Gentile ("Gentile"), a Senior Vice President with Defendant, repeatedly requested additional resources to better train staff, and stated that the high staff turnover rate was creating safety and quality problems for the facilities' residents. (*Id.* ¶ 18–20.) No action was taken in response to Plaintiff's complaints and requests. (*Id.* ¶ 20.)

In August and October 2015, the New York State Office for People with Developmental Disabilities (the "Office") conducted audits of the Staten Island group homes and found serious safety deficiencies at two locations. (*Id.*)  The Office issued two "45-day Statements of Deficiency" that described "systemic deficiencies in protective oversight, incident management, and staffing training, amongst other areas of non-compliance and imminent danger to the residents." (*Id.*)

An executive director employed by Defendant asked Plaintiff for a written explanation of the cause of the problems. (*Id.*)  Plaintiff submitted the requested information. (*Id.*)  Defendant then transferred Plaintiff away from Staten Island and reassigned him to work primarily in Rockland and Orange Counties. (*Id.* ¶ 21.)  However, Defendant did not communicate to Plaintiff that the transfer and reassignment were for disciplinary or performance reasons. (*Id.*)  Further, in August 2016, Defendant reassigned a program manager who had worked under Plaintiff in Rockland and Orange Counties to another facility, leaving Plaintiff "without the traditional support and . . . staffing that typically had existed." (*Id.* ¶ 23.)  The program manager was reassigned to work with a female Assistant Vice President. (*Id.* ¶¶ 23, 26.)

In September 2016, Defendant received a third 45-day Statement of Deficiency from the Office for a facility under Plaintiff's management. (*Id.* ¶ 24.)  Upon receipt of the Statement, Plaintiff conducted an investigation as required by state regulations, (*id.* ¶ 28), and concluded that the facility's residence manager, who was later fired, (*id.* ¶ 29), "had likely falsified records certifying that residents had received healthy and appropriate meals," (*id.* ¶ 28).  Plaintiff reported his findings to Defendant's human resources department on November 18, 2016. (*Id.*)

Three days later, on November 21, 2016, Gentile terminated Plaintiff's employment with Defendant via written memorandum, citing the three 45-day Statements of Deficiency and the

alleged demotion to Rockland and Orange Counties. (*Id.* ¶ 24.) Plaintiff alleges that these reasons were pretextual and that his termination was in fact due, at least in part, to gender discrimination. (*Id.* ¶¶ 25, 30–31.) According to Plaintiff: (1) three other similarly-situated Assistant Vice Presidents, all women, received numerous 45-day Statements of Deficiencies between 2013 and 2016, yet were not fired, (*id.* ¶¶ 33–34); (2) Plaintiff's replacement as Assistant Vice President was a woman, (*id.* ¶ 32); (3) the program manager who had been transferred away from him in 2016 was transferred to support a woman, (*id.* ¶¶ 23, 26); and (4) Plaintiff had not received a negative performance review or been otherwise disciplined, (*id.* ¶ 30).

Further, Plaintiff alleges that his termination was, in part, a form of retaliation for Plaintiff's complaints relating to Defendant's failure to provide necessary training, resources, and supplies at certain facilities, Plaintiff's his whistleblowing regarding Defendant's employee's falsification of records. (*Id.* ¶¶ 35–38, 47–50.)

Finally, Plaintiff alleges that, after being terminated, Defendant refused to pay Plaintiff severance pay due to him under its published severance plan. (*Id.* ¶¶ 39–46.)

B. Procedural Background

Plaintiff filed his initial Complaint on August 15, 2017. (Dkt. No. 1.) On November 29, 2017, Plaintiff filed the instant Amended Complaint. (Dkt. No. 16.) On December 19, 2017, Defendant filed a pre-motion letter indicating the grounds on which it anticipated moving to dismiss. (Dkt. No. 19.) Plaintiff filed a responsive letter on December 26, 2017. (Dkt. No. 20.) Following a conference held February 7, 2018, the Court adopted a briefing schedule. (Dkt. No. 22.) Defendant filed the instant Motion To Dismiss and accompanying papers on May 14, 2018. (Not. of Mot. (Dkt. No. 30); Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 31).) On

4

June 15, 2018, Plaintiff filed a memorandum in opposition. (Mem. of Law in Opp'n to Mot. ("Pl.'s Mem.") (Dkt. No. 33).) Defendant filed a reply on July 6, 2018. (Reply Mem. of Law in Supp. of Mot. ("Def.'s Reply") (Dkt. No. 34); Aff. of Joseph B. Cartafalsa, Esq. in Supp. of Mot. (Dkt. No. 35).)

## II. Discussion

Defendant moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on grounds (1) that the New York Whistleblower Act's waiver provision precludes Plaintiff's Title VII claim; (2) that Plaintiff fails to allege sufficient facts showing that Defendant's severance plan is covered by ERISA; and (3) that, because both federal claims must be dismissed, the Court should decline to exercise supplemental jurisdiction over Plaintiff's New York Whistleblower Act claim. (Def.'s Mem. 2–3.) The Court addresses each in turn.

### A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

5

complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . . " (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

B. <u>Analysis</u>

1. <u>Waiver of Title VII Claim</u>

The New York Whistleblower Act bars employers from taking "any retaliatory personnel action against an employee" who "discloses . . . to a supervisor . . . an activity, policy or practice

of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud." N.Y. Labor Law § 740(2)(a). Employees may seek judicial relief against employers that violate this statute. *Id.* §§ 740(4)(a), (5). However, under the Act's waiver provision, "the institution of an action in accordance with [§ 740] shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, law, rule or regulation or under the common law." *Id.* § 740(7).

The scope of the Act's waiver provision "has not been definitively decided by either the Second Circuit or the New York Court of Appeals." *Barker v. Peconic Landing at Southold, Inc.*, 885 F. Supp. 2d 564, 568 (E.D.N.Y. 2012); *see also Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 134 (2d Cir. 2007) (noting that "courts have adopted differing and sometimes contradictory limiting constructions of this waiver" (citations omitted)). Courts interpreting the waiver provision "have effectively sorted into two camps." *Harisch v. Goldberg*, No. 14-CV-9503, 2016 WL 1181711, at *11 (S.D.N.Y. Mar. 25, 2016). Under the broad interpretation of the provision, "the waiver applies to claims that relate to the same retaliatory action on which the [§] 740 claim is based." *Cabrera v. Fresh Direct, LLC*, No. 12-CV-6200, 2013 WL 4525659, at *2 (E.D.N.Y. Aug. 27, 2013) (collecting cases). That is, "any claims that arise out of the course of conduct forming the basis of the [§] 740 claim are barred." *Barker*, 885 F. Supp. 2d at 568 (collecting cases). New York state courts have largely followed the broad interpretation. *See Semeraro v. Woodner Co.*, No. 17-CV-8535, 2018 WL 3222542, at *7 (S.D.N.Y. July 2, 2018) (collecting cases).

"However, New York federal courts" have adopted a "narrow[]" interpretation of the waiver provision. *Id.* (collecting cases); *see also Barker*, 885 F. Supp. 2d at 569 (collecting

7

cases). Under this interpretation, the waiver applies only to "other legal rights and remedies that protect against the same *wrong* that the statute itself prohibits." *Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 267 (S.D.N.Y. 2001). That is, the waiver applies only to "rights and remedies concerning whistleblowing," *Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F. Supp. 3d 489, 501 n.12 (S.D.N.Y. 2016) (citation omitted), and does not bar "legitimately independent claims not related to whistleblowing even if the claims have overlapping facts, such as the same underlying retaliatory action," *Cabrera*, 2013 WL 4525659, at *2 (citation and quotation marks omitted).

Defendant, of course, argues that this Court should adopt the broad interpretation. (*See* Def.'s Mem. 3–4.) Yet, as articulated in the leading analysis of the issue, *see Collette*, 132 F. Supp. 2d at 260–74, the narrow interpretation "effectuates the [New York Whistleblower] Act's remedial purpose," *id.* at 274 — namely, to "protect[] the rights of employees who report violations of law that present a danger to public health or safety," *Barker*, 885 F. Supp. 2d at 569 — because it "permit[s] employees to pursue legitimately independent claims, while prohibiting claims that duplicate or overlap the statutory remedies for retaliation on account of whistleblowing activity alone," *Collette*, 132 F. Supp. 2d at 274. Put another way, the narrow interpretation, by virtue of not "requiring the employee, as the price of asserting whistleblower protection, to waive any rights he might have under independent causes of action (such as battery, or defamation, or sexual harassment, or employment discrimination)," avoids creating a "disincentive to invoke the Act's protection" that would "deter[] the very whistleblowing conduct that the Act intends to encourage." *Shipkevich v. Staten Island Univ. Hosp.*, No. 08-CV-1008, 2009 WL 1706590, at *5 (E.D.N.Y. June 16, 2009) (citation omitted).[1] Accordingly, this

---

[1] Separately, the narrow approach also avoids the "constitutional concerns raised by a

8

Court joins those other courts in this Circuit that, following *Collette*, interpret the Act's waiver provision to apply only to those claims relating to whistleblowing.

Applying the narrow interpretation, Plaintiff's Title VII claim is not waived. Even though the Title VII and whistleblower retaliation claims arise from the same "course of conduct" — namely, Plaintiff's employment by Defendant, his complaints to Defendant regarding conditions at its facilities, and his termination by Defendant — they are clearly "legitimately independent claims," *Collette*, 132 F. Supp. 2d at 274, that "seek to remedy separate wrongs," *Cabrera*, 2013 WL 4525659, at *3.[2] Accordingly, the Title VII claim is not waived. *See Semeraro*, 2018 WL 3222542, at *8 (holding waiver provision does not bar collective bargaining agreement claim); *Duarte v. St. Barnabas Hosp.*, 265 F. Supp. 3d 325, 345 (S.D.N.Y. 2017) (holding waiver provision does not bar "claims under the federal, state, or anti-discriminatory statutes"); *Catapano-Fox v. City of New York*, No. 14-CV-8036, 2015 WL 3630725, at *9 (S.D.N.Y. 2015) (same); *Barker*, 885 F. Supp. 2d at 569 (holding waiver provision does not bar federal and state law disability discrimination claims); *Kramsky v. Chetrit*

---

construction that requires the automatic waiver of a plaintiff's federal rights." *Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F. Supp. 3d 489, 501 (S.D.N.Y. 2016) (collecting cases); *see also Collette*, 132 F. Supp. 2d at 266 (noting Supremacy Clause concerns under broad interpretation of waiver provision).

[2] Defendant's argument that, even applying *Collette*, Plaintiff's Title VII claim is waived because it "arise[s] from the same wrong and [is] intertwined with the [same] facts [as] his" New York Whistleblower Act claim, (Def.'s Mem. 4), misreads *Collette* and the cases following it. The key inquiry is whether the two claims are "legitimately independent." *Collette*, 132 F. Supp. 2d at 274. Plaintiff's Title VII gender discrimination claim is independent from his whistleblowing retaliation claim because they "seek to remedy separate wrongs." *Cabrera*, 2013 WL 4525659, at *3. That is so even though the two claims "have overlapping facts" and involve the "same underlying retaliatory action" of Plaintiff's termination. *Id.* at *2 (citation omitted); *cf. Harish*, 2016 WL 1181711, at *12 (holding the plaintiff waived his state-law retaliation claim under by bringing a New York Whistleblower Act claim because "[t]here is no daylight between the two sets of allegations" and the two laws "are textually nearly identical because they are aimed at the same wrong").

9

*Grp., LLC*, No. 10-CV-2638, 2011 WL 2326920, at *6 (S.D.N.Y. June 13, 2011) (holding waiver provision does not bar Title VII claim); *Cabrera*, 2013 WL 4525659, at *3 (holding waiver provision does not bar state law gender and disability discrimination claims); *Collette*, 132 F. Supp. 2d at 274 (holding waiver provision does not bar disparate impact discrimination claim).

### 2. ERISA Claim

#### a. Applicable Law

ERISA governs employee benefit plans offered and administered "by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). Under ERISA, a "civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To prevail on such a claim, "a plaintiff must establish the existence of an employee benefit plan." *Hardy v. Adam Rose Ret. Plan*, 957 F. Supp. 2d 407, 413 (S.D.N.Y. 2013), *aff'd*, 576 F. App'x 20 (2d Cir. 2014).

An employee benefit plan may be an "employee welfare benefit plan" or an "employee pension benefit plan." 29 U.S.C. § 1002(3). An employee welfare benefit plan is a plan "established or . . . maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise," various medical, disability, death, and unemployment benefits. 29 U.S.C. § 1002(1).[3] An employee pension benefit plan is a plan

---

[3] Excluded from the definition of "employee welfare benefit plan":

> (1) Payment by an employer of compensation on account of work performed by an employee, including compensation at a rate in excess of the normal

"maintained by an employer . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program — (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." *Id.* § 1002(2)(A).[4]

ERISA, however, offers no functional definition of "plan." The Supreme Court has accordingly instructed that ERISA applies only to those benefit programs that require the implementation of an "ongoing administrative program." *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987); *see also Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 76 (2d Cir. 1996) (stating that "ERISA subject matter jurisdiction depends upon the need for an administrative program"); *Hardy*, 957 F. Supp. 2d at 413 ("The touchstone for determining the existence of an ERISA plan is whether a particular agreement creates an ongoing administrative scheme." (citing *Grimo v. Blue Cross/Blue Shield*, 34 F.3d 148, 151 (2d Cir. 1994))). Thus,

---

        rate of compensation on account of performance of duties under other than ordinary circumstances, such as [overtime pay or other premiums];

(2) Payment of an employee's normal compensation . . . on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons . . . ; and

(3) Payment of compensation . . . on account of periods of time during which the employee, although physically and mentally able to perform his or her duties and not absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment). . . performs no duties [such as while on vacation, military duty, serving as a juror or testifying, training, or on sabbatical].

29 C.F.R. § 2510.3–1(b).

[4] Excluded from the definition of "employee pension benefit plan" are "payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3–2(c).

ERISA is not implicated where the employer's benefit program merely requires it make a "payment triggered by a single event," such as an employee's termination, or where the employer's obligation does not require administration and is satisfied by "do[ing] little more than writ[ing] a check." *Fort Halifax*, 482 U.S. at 12. This is because an employer's promise — absent an "ongoing administrative program or scheme" — to "make a one-time, lump-sum payment triggered by a single event will rarely if ever implicate the need for uniformity that Congress sought when it included within ERISA a provision that preempted state laws relating to benefit plans." *Okun v. Motefiore Med. Ctr.*, 793 F.3d 277, 279 (2d Cir. 2015) (citation and quotation marks omitted). Accordingly, to determine whether an ERISA plan requires the implementation of an ongoing administrative scheme, the Second Circuit has instructed courts to consider three factors: (1) "whether the employer's undertaking or obligation requires managerial discretion in its administration"; (2) "whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits"; and (3) "whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." *Schonholz*, 87 F.3d at 76 (collecting cases). These factors, however, "are not the exclusive factors that may be considered, and no one is determinative." *Hardy*, 957 F. Supp. 2d at 414 (citation omitted).

b. Application

Defendant argues that Plaintiff fails to allege that its severance pay plan is covered by ERISA and, accordingly, that Plaintiff's ERISA claim must be dismissed. (Def.'s Mem. 5.) On a Rule 12(b)(6) motion, the Court's review "is limited to facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken." *Hertz Corp. v. City of New York*, 1

F.3d 121, 125 (2d Cir. 1993). However, "where the record contains the undisputed terms of the disputed plan, . . . a [c]ourt may decide the applicability of ERISA as a matter of law." *Foster v. Bell Atl. Tricon Leasing Corp.*, No. 93-CV-4527, 1994 WL 150830, at *1 (S.D.N.Y. Apr. 20, 1994) (citations omitted); *see also Forte v. BNP Paribas*, No. 14-CV-8556, 2015 WL 3604317, at *2 (S.D.N.Y. June 8, 2015) (same) (citations omitted). Here, Plaintiff has attached the relevant portions of Defendant's severance plan to his memorandum in opposition to the Motion. (*See* Pl.'s Mem. Ex. A ("Severance Plan").) Defendant does not dispute the accuracy of these portions or object to the Court's considering this document, and indeed itself cites to the Severance Plan. (*See* Def.'s Reply 6–7.) Accordingly, the Court considers both the allegations contained in the Amended Complaint and the undisputed terms of the Severance Plan. *See Forte*, 2015 WL 3604317, at *1 n.1 (considering severance plan pamphlet submitted by the defendant "because it is both integral to the [a]mended [c]omplaint and incorporated in it by reference" and because the plaintiff "does not object to the Court's considering" it).

The Court need not, however, apply the three *Schonholz* factors at this time. Even assuming the Severance Plan is covered by ERISA, the Severance Plan itself provides that employees are eligible for severance pay only if, among other things, their "termination is a Qualifying Event." (Severance Plan ¶ 2.) A "Qualifying Event" is defined as "an Employee loses employment because of reorganization, elimination of a position, or department cutback." (*Id.* ¶ 1.) Here, Plaintiff repeatedly alleges that he was "terminated" and that another employee "replaced" him. (Am. Compl. ¶¶ 12, 24–25, 28–32, 35, 38, 41, 44–45, 51.) Plaintiff at no point alleges that Defendant engaged in a reorganization, that his position was eliminated, or that Defendant adopted cutbacks that caused him to be terminated. Accordingly, the Amended Complaint does not allege Plaintiff's eligibility for severance pay under the terms of the

13

Severance Plan.

Although Plaintiff has not requested leave to submit a second amended complaint, the Court has considered whether he should be given an opportunity to do so. Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citations omitted). Here, there is no indication that Plaintiff's ERISA claim was made bad faith, or that allowing Plaintiff to replead his claim would result in undue delay or prejudice to Defendant. Nor does it "appear[] beyond doubt that . . . [P]laintiff can plead no set of facts that would entitle him to relief," such that repleading would be futile. *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citation omitted). Accordingly, the Court dismisses Plaintiff's ERISA claim without prejudice.

### C.  Supplemental Jurisdiction

Defendant argues the Court should decline to exercise supplemental jurisdiction over Plaintiff's New York Whistleblower Act claim. (Def.'s Mem. 6.) The Court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Here, the Court has not dismissed Plaintiff's Title VII claim. Because federal claims remain, there is no basis upon which the Court may decline to exercise supplemental jurisdiction.

### III.  Conclusion

For the reasons stated above, Defendant's Motion To Dismiss is granted in part and denied in part. Plaintiff's ERISA claim is dismissed without prejudice. If Plaintiff wishes to file

a second amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Any newly filed complaint will replace, not supplement, the instant Amended Complaint, and must contain all of the claims, exhibits, and factual allegations Plaintiff wishes the Court to consider, as well as all changes to correct the deficiencies identified in this Opinion. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion. (Dkt. No. 30.)

SO ORDERED.

Dated: March 6, 2019
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE